# GRAFTON,

## JULY TERM, A. D. 1841.

---

### HOLLISTER *vs.* BARKLEY.

Where, upon a bill in equity, the case is committed to a master, to state an account between the parties, the account may be taken either by requiring the parties to bring in debtor and creditor accounts under oath, or by examining them on interrogatories ; or both modes may be combined, which is the better practice.

Where the parties, after the case was referred to a master to take an account, filed what was called an amended bill, and an amended answer—the first containing a statement by the plaintiff of his claims, with interrogatories to the defendant, and the latter containing the statement of the defendant, with answers to the interrogatories—*Held*, that they were to be regarded as part of the examination before the master, on taking an account.

Where an allegation in an answer is responsive to the bill, the plaintiff, if he seeks to impeach the answer upon that point, must overcome it by something more than the testimony of a single witness ; but it is not necessary that there should be two witnesses, or matter equivalent to two.

A judgment at law upon the same point, duly rendered in a suit between the parties, is a bar to relief in equity.

In taking an account before a master, witnesses may be examined before him, or on interrogatories, and one party may prove the admissions or declarations of the other, relative to the subject matter.

The statements of a party under oath, upon the taking of an account, cannot have the character or effect of matter in an answer responsive to a bill, except, perhaps, so far as they are answers to the interrogatories of the other party, or explanations of such answers.

The admission of a fact, by the defendant, in his answer, must be held conclusive against him, notwithstanding he exhibits evidence before the master tending to show that he made the admission under a mistake. If the defendant has made a mistake in his answer, he can be relieved by leave to amend, or to file a supplemental answer.

In making up the partnership account, where a partnership has been dissolved, one partner cannot be charged with debts due to the partnership merely because he has not collected them, nor because he has refused to permit the individual debts of the other partner to be set off against them.

Interest may be allowed in equity on all sums due and payable, or from the

time when a rest should be made in the accounts. The practice of the parties may be followed, or annual rests allowed. And the period of the dissolution of the partnership is a proper time to make a rest.

IN EQUITY. An abstract of the bill and answer may be found, 9 *N. H. Rep.* 230.

The case having been committed to a master, to state the partnership accounts; upon the coming in of his report, it appeared, that after it was so committed, the parties filed what were called an amended bill, and an amended answer, being in fact a detailed statement by the plaintiff of the partnership affairs, and of his claims, with additional interrogatories to the defendant, and an answer by the defendant to these interrogatories, with a statement of his claims.

Upon these papers, and upon evidence laid before the master, divers questions arose, upon which he made a special report.

The defendant alleged that one half of his services in operating the mills by the parties, in partnership, were, by the partnership agreement, to be paid by the plaintiff, at all events, out of his private funds, and that those services, to that extent, constituted a private claim in his favor against the plaintiff. The master found the fact to be as alleged by the defendant. But if the court should be of opinion that the answer of the defendant, in relation to the contract of partnership, is not evidence of such a character as will require testimony, equivalent to that of two witnesses, to counterbalance it—then the master desired to submit a further report as to that part of the case.

The plaintiff claimed to be allowed for the services of S. Bidwell, one of the hands employed by him in operating the mills, a sum over and above the services of Bailey and Ainsworth, who were employed by the defendant. This claim the master disallowed. But if the court should be of opinion that the answer of the defendant, in relation to a certain settlement between the parties in 1835, is no evidence of the facts therein stated, in relation to that settle-

ment—and if the court should be of opinion that the defendant had no right to prove, on the hearing before the master, the statements made by the plaintiff, under oath, on the hearing before auditors of the case at law between these parties, in which the defendant sought to recover for his services, then the master wished to submit a further report in relation to this branch of the case.

It was proved before the master that the plaintiff paid more for the services of Bidwell, employed by him, than the defendant paid, the same year, for the hands he employed.

The report then contained a statement of the accounts. But the master further reported, that if the court should be of opinion that the defendant is not precluded by his answer, from shewing an error in posting the account on which was predicated his admission that he had received of the partnership funds the sum of $3132·38, then he allowed him the further sum of ten dollars to be added to his account against the firm, as stated. And if the court should be of opinion that the defendant is not precluded by his answer from showing errors and mistakes in the settlement of the accounts between the parties, in reference to the erection of the mills, &c., on which is based his admission that the plaintiff had advanced the sum of $188·80 more than the defendant had—then he allowed him the further sum of $102·41, to be added to the amount against the firm, as stated.

It further appeared from the report, that the defendant claimed that the plaintiff should be charged with certain accounts, due the partnership of Hollister & Barkley, and remaining uncollected. In reference to which it was proved, that the individuals were severally indebted to the partnership at the time of its dissolution—that soon after, the plaintiff published a notice, stating the dissolution, and that the books of the firm were assigned to him for collection, and were to be found with him—that this notice was given with-

out the assent of the defendant—that the books have re-
mained with the plaintiff, for the most of the time up to the
commencement of the suits between them—that J. Savage,
one of the debtors, had a claim against the defendant, of
more than the amount of his indebtedness to the firm ; and
it was agreed between him and the defendant, that the part-
nership claim should be allowed on the defendant's private
account—that on application to the plaintiff, he refused to do
so, saying that the defendant had got more than his part—
whereupon Savage sued the defendant, and recovered his
debt against him, with a bill of cost amounting to about $22,
which amount the defendant now claims of the plaintiff—
that Savage had a private account against the plaintiff, which
he supposed to be about to the amount of the company ac-
count—that the plaintiff has not called on him for payment
—that until recently he had enough of open attachable prop-
erty to pay said claim at any time—that his property is now
encumbered with mortgages, and that a part of the claim is
now barred by the statute of limitations. The other debt-
ors had claims, some against the plaintiff, and some against
the defendant. The plaintiff had refused to allow the claims
thus held by the debtors against the defendant, and portions
of the debts thus due the firm had become barred by the
statute of limitations. The master reported that if the court
should be of opinion, upon these facts, that the plaintiff is
chargeable with any part of these demands, the sum was to
be added to his indebtedness to the firm.

The report stated further, that the defendant, on the 19th
or 20th of March, A. D. 1837, requested the plaintiff to settle
their company affairs, and if he could not attend to it then,
to name a day when he would attend to it—saying that if
he owed the company any thing, he was ready to pay it—
that the plaintiff declined settling, on the ground that if he
did so, it would be acknowledging the defendant's private
claim, for one half of his services, to be good—the parties
being at that time contending at law in relation to that claim.

Hollister *v.* Barkley.

The master allowed no interest, except on cash paid out. If the court should be of opinion that interest should be allowed on the other sums stated in the account, then interest to be added.

*A. Livermore,* for the plaintiff. The questions arising on this report are in substance these—1. Whether the answer of Barkley is evidence that Hollister agreed to pay him one half the price of his personal services, whether there were profits or not.

2. Whether the answer is evidence that upon the partial or attempted settlement, in August, 1835, the parties definitively agreed that the services of Bailey and Ainsworth should be considered, in favor of the defendant, as tantamount to those of Bidwell, during those years, who was employed and paid by Hollister much higher wages?

3. Whether the answer of Barkley precludes his showing an error of $10 in posting?

4. Whether it precludes his showing an error of over $100, in the $188·80 charged and admitted as due from the firm to Hollister, in the building account?

5. Whether Hollister is liable for debts due the firm from persons to whom Barkley was indebted, (some of which have become barred by limitations,) and for costs of suits brought against Barkley by such persons?

Of these questions, the first has become immaterial by reason of a judgment at law, in the court of common pleas; and the third is conceded, on account of its insignificance, by the plaintiff.

As to the second, we hold, for the plaintiff, that the answer is no proof, because those parts of it which related to those matters were wholly gratuitous, and not responsive to any charge or interrogatory in the bill, and ought regularly to have been expunged, as redundant and impertinent. Also, because having, by confessing the partnership, charged himself with one half the expenses, he cannot by

his answer discharge himself, by setting up a settlement, payment, or other matter. 2 *J. C. R.* 62.

The item in the fourth having been precisely admitted in his answer, ought not to have been put in question, though denied in his answer to the amendment, unless the amendment contained some charge or interrogatory which justified such denial, and leave of court obtained to amend the sworn answer.

As to the fifth, if either party had a right to settle with customers, each had.

*Bell, & Goodall,* for the defendants.

PARKER, C. J.* According to the present English practice, there are two modes of taking accounts in the master's office ; the one in the form of a debtor and creditor account, brought in by the accounting party ; the other by examining such party upon interrogatories ; and these two modes are sometimes combined in taking an account. 2 *Smith's Ch. Pr.* 114 ; *Gresley's Eq. Evid.* 395. The rule in New-York is the same. *New-York Ch. Rules* 79, *Rule* 107 ; 4 *Paige's R.* 112, *Story* vs. *Brown.* The debtor and creditor account is prepared as an affidavit, and this affidavit is a substitution for an examination, which was the manner of accounting before the New Orders. 2 *Smith's Ch. Pr.* 114 ; *Blake's Ch. Pr.* 204, 250. Oral examinations were common in New-York. 2 *Johns. Ch. R.* 499, *Remsen* vs. *Remsen.* But the master is still at liberty to examine on interrogatories. 2 *Smith* 122 ; *New-York Ch. Rules and Orders* 79.

As we have adopted no rule in this respect, either of these modes may be resorted to ; but the better practice probably is to require the parties to bring in debtor and creditor accounts, and examine them on written interrogatories, the master taking down the answers. In this case, after the

---

* WOODS, J., having been of counsel, did not sit.

matter was referred to the master to state an account, instead of the modes before mentioned, the parties, by some arrangement, filed, what has been termed an amended bill, and an amended answer, and a preliminary question arises as to the effect to be given to these documents. They were not filed on an application to, or by an order of the court; nor until after the case was referred to the master to state the account. They were filed for the purpose of enabling him to make such statement, and relate to the items of it. The amended bill charges nothing, and prays no further relief; nor does the filing of it appear to have been necessary to the progress of the case. Under these circumstances, although there are interrogatories contained in it, we are of opinion that these papers should be regarded as no more than statements, thus far, of the accounts, by the parties, under oath; or as their examination, on oath, furnishing materials from which the master might be aided in making up the account. The common form of a decree, referring the case to a master to take an account, contains an authority for examining the parties, ( *Gresley's Eq. Ev.* 395, 397,) and these documents may, as far as they go, well be regarded as part of such examination.

The remaining questions arise upon the report of the master.

In the first place he finds that one half the services of the defendant, in operating the mills, was to be paid by the plaintiff, at all events. But if the court are of opinion that the answer of the defendant, in relation to the contract of partnership, is not evidence of such a character as to require testimony equivalent to that of two witnesses to counterbalance it, the master desires to make a farther report upon this point.—The allegation in the answer, that one half of the services of the defendant were to be paid for by the plaintiff, at all events, is responsive to the bill, (*see* 9 *N. H. Rep.* 233, 237,) and the plaintiff, to make out his case on that point, must overcome the answer by the evidence of

two witnesses, or something more than the testimony of a single witness. It is not necessary that there should be two witnesses, or matter equivalent to two. The answer being made under oath, upon the call of the plaintiff, he cannot control and defeat it by the evidence of one witness contradicting it. There must be a weight of testimony in his favor. *Gresley's Eq. Ev.* 4, *and cases cited.* It may be referred to as a matter within the knowledge of the court, one of the members having necessarily presided on the trial, (and it has been referred to by the plaintiff's counsel in the argument,) that the defendant has recovered a judgment at law, in his suit against the plaintiff for these services, on the ground that the plaintiff was, by agreement, personally responsible for one half of those services, as alleged in the defendant's answer. This result is not regularly before the court in this case, nor has any reliance been placed upon this judgment at law. Were it before us on a supplemental answer, it might perhaps be found to be a bar, thus far, to the plaintiff's claim in this case. That suit was commenced anterior to the filing of the present bill. One object of the latter was to obtain an injunction against further proceedings at law. But on the dissolution of the injunction, (9 *N. H. Rep.* 238,) the case at law stood in regular order for trial; and having been tried, upon the same point, the judgment must, if regularly before us, be regarded as a bar to relief here. *Story's Eq. Pl.* 602, 605 ; *Mitford's Pl.* 314, [253.] We cannot, in equity, reverse a judgment regularly obtained at law, upon the ground that we think the fact to be different from what the jury have found it, or try it again upon the merits. As the matter now stands, the report must have been recommitted, if the plaintiff had desired it, because, strictly speaking, evidence equivalent to that of two witnesses is not essential. There must be, as we have seen, something more than that of one. But we now understand that the plaintiff waives any exception to the report, in this particular.

The next question relates to a claim of the plaintiff for the services of one Bidwell. The claim is disallowed; but if the answer of the defendant, relative to a settlement between the parties in 1835, is no evidence of the facts therein stated, respecting that settlement; and if the court is of opinion that the defendant had no right to prove before the master, the statements of the plaintiff, under oath, on a hearing before auditors, in the suit at law, then the master desires to submit a farther report on this point. We are not aware of any rule by which proof of the plaintiff's statements could be excluded from the consideration of the master, in making up the account. They were deliberately made, under the sanction of an oath, and nothing is disclosed, or suggested, why the defendant is not fully warranted in using the admissions of the plaintiff, made under such circumstances. Witnesses for either party may be examined before the master, or on interrogatories. *Gresley's Eq. Ev.* 389. But the statements of the defendant, relative to the settlement in 1835, are contained in the amended answer, and are not, therefore, entitled to any further weight than similar statements made on an examination of the defendant before the master on interrogatories. We have seen that it is competent for the master to examine the parties, in taking the account. But it is said that where a party is examined before a master, in relation to his own rights in a cause, the examination is in the nature of a bill of discovery. There can be no cross examination by his own counsel, and he cannot give testimony in his own favor, except so far as his answers may be responsive to the questions put by the opposite party. But he may accompany his answer by any explanation fairly responsive to the interrogatory, which may be necessary to rebut any improper influence arising from the answer. 1 *Paige's Ch. R.* 122, *Benson* vs. *Le Roy.* If the master has given to statements of the defendant, respecting this settlement, no greater weight than a stated account, with the affidavit of the party annexed, is entitled to, it is

well enough. But those statements cannot have the character and effect of matter in an answer, responsive to a bill, except perhaps so far as they are answers to the interrogatories of the other party, or explanations of such answers, (*Gresley's Eq. Ev.* 397 ; 2 *Smith's Ch. Pr.* 122) ; and if any greater effect has been given to them, the report must be recommitted. The statement of the defendant, in relation to the agreement and settlement in 1835, seems not to be responsive to the interrogatories of the plaintiff, in the amended bill, so called. Those interrogatories relate to a settlement in 1830. Nor can they be regarded as explanatory of some matter called for by the interrogatories.

The next question is, whether the defendant is precluded, by the admissions in his answer, from showing errors and mistakes in a former settlement of accounts between the parties ? To the correction of an error of $10, in the casting of the accounts, the plaintiff does not object, and that correction may, therefore, be made. But the admission of the defendant, in his answer, that the plaintiff had advanced towards the erection of the mills the sum of $188·80, more than the defendant, must be held conclusive against him, so long as it stands as his admission under oath, notwithstanding he may have exhibited evidence tending to show that he might have made the admission under a mistake. 2 *Smith's Ch. Pr.* 273 ; *Gresley's Eq. Ev.* 9. The propriety of this rule is manifest. The admission may be true, notwithstanding the evidence adduced ; and if such evidence could be admitted, the defendant might, in some instances, avoid his answer, when it was strictly true ; because the plaintiff had no other evidence to offer against the evidence adduced by the defendant, except the very evidence that the proceeding in equity designed to give him, to wit., the defendant's admission under oath. If the defendant has made mistakes in his answer, he can be relieved on a proper case made, by leave to amend, or, according to the modern practice, to file a supplemental answer. 2 *Smith's C. Pr.* 270.

Hollister *v.* Barkley.

Another question is, whether the plaintiff should be charged in the account, with sums due to the partnership from several individuals which he does not appear to have collected. There is no pretence for charging the plaintiff with any of these sums because he refused to permit them to be set off against debts due from the defendant to those who were thus debtors of the partnership. The defendant had no right to have them thus set off. As little pretence is there for charging the plaintiff with costs which accrued on one of the defendant's debts. But it seems, from the report, that some of these demands are now barred by the statute of limitations, and that they might have been collected by the plaintiff, who had the books. Perhaps one reason why he did not attempt to collect them was because some of the debtors had claims against himself. We have found no authority, however, that will justify the court in charging the plaintiff with these demands, (as if he had collected them,) by reason of his neglect, and without an authority we are not prepared to adopt the principle. The defendant might also have instituted suits for their collection ; and if the plaintiff had then released them, or withheld the evidence, perhaps that would have been sufficient. A release would have been good evidence that he had received the amount. A receiver might have been appointed to collect the demands. 1 *Story's Eq.* 622. The defendant may perhaps be entitled to a division of the demands, and to receive those against individuals who have no claims against the plaintiff.

Another question is on the allowance of interest. We have held, at law, that interest is to be allowed on money due and sums liquidated. 6 *N. H. Rep.* 571, *Mahurin* vs. *Bickford.* Such interest is allowed in equity as is just and reasonable. *New-York Ch. Rules* 79. And it is just and reasonable to allow interest on all sums which are due and payable, or from the time when there should be a rest in the accounts. Annual rests may be allowed, and

interest cast on those rests. 2 *Smith* 113. The rule in England, for the allowance of interest, in equity, seems not to be so broad as it is here at law. *See* 2 *Smith* 346. When the parties have adopted the mercantile usage of stating an interest account, and casting interest on each item, the same course may be followed by the master, in stating a partnership account. The period of the dissolution of the partnership is a proper time to make a rest, and interest is allowed on the balance. 2 *Johns. Ch. R.* 210, *Stoughton* vs. *Lynch.*